States v. Audain Miss Carol, we're ready when you are. May I please the court, Your Honor? My name is Linda Carol. I have been appointed by this court to represent the appellant, Joel Audain. The case really boils down to an application of law dealing with the motion for reduction of sentence pursuant to Title 1832, I think it's 84, subsection C. The order under review the order dated July the 9th, 2015 in which the trial judge denied a motion, a pro se motion that was filed by Mr. Audain for a reduction of his sentence. In that particular order, the court states that number one, the court having denied a that said motion is denied. The order goes on to state that even if the defendant were eligible for reduction of sentence, the court in its discretion denies it primarily because of the defendant's status as a law enforcement officer, his abuse of trust, and his obstruction of justice. Mr. Audain was one of several individuals who was tried by a jury. He was convicted . . . We've got that counsel. Your argument, as I understand it, best argument, you can do it either two ways, is that the district court didn't have, quote, jurisdiction, end of quote, and I put it in scare quotes because I don't think it's required as a jurisdictional matter to reach the merits of the 3582C until it determined that he would have been eligible if the district court wanted to give it to him. Judge Marino skipped over that step and said even if said, et cetera, I'm not sure that you're arguing that we ought to send it back for the district court to find whether he'd be eligible or not because you can't win if that's the only finding. If we send it back and say, all right, we understand you wouldn't grant it, but now tell us whether you have jurisdiction to decide whether you wouldn't grant it or not, you'll lose if he says, I do have jurisdiction, but I've already told you there's no merits. You've got to win on the no merits ruling was error, right? I'm sorry, Your Honor. Are you saying that the district court erred by skipping over the first step in determining whether or not the amendment applied to your defendant's case, not whether he should . . . If the amendment applies, it only gives the district court discretion to decide whether to re-sentence. Yes, correct. Judge Marino skipped over the first step. That is correct, Your Honor. Are you saying we ought to send it back because he skipped over the first step? No, Your Honor. I think it needs . . . Right. We're on the merits and your argument on the merits is he contradicted one of the initial sentencing findings or holdings which was the obstruction of justice enhancement. My argument is that plus an additional one, Your Honor. The court did not consider the statutory requirements for purposes of determining whether or not he should grant it. He didn't explicitly go down them one by one. He didn't do anything, Your Honor. He just made the statement that was clearly erroneous that . . . He didn't explicitly mention 3553A or the factors there. The court specifies aspects of the offense and the characteristics of Ordain that supported its decision. Among other things, the district court references Ordain's status as a law enforcement officer. Therefore, that suggests that he considered the characteristics of the defendant. The first factor is the nature under 3553A is the nature and circumstances of the offense and the history and characteristics of the defendant. The court also referenced the abuse of trust and obstruction of justice and wouldn't that suggest that he considered again not only the nature and circumstances of the offense, that is to say the factors in 3553A1, the seriousness of the offense and the need to promote respect for the law. He didn't say this characteristic or fact is matched up against this 3553A factor, but did he have to do that? Wasn't it enough for him to say, look at A, B, C, and D, which are factors inherent in this case that lead me to conclude I'm not giving this guy any reduction. I don't know how you say, therefore, that he never considered the 3553A factors unless your argument is he must say in high verba, I looked at 3553A1, 2, 3, 4, 5, 6, 7 and here's what matches up and I don't think he's obliged to do that. I'm not suggesting, Your Honor, and I would agree with you and I do agree with you, Your Honor, there has to be a record acknowledging that there are other factors and I think one of the factors and I wrote about it in the initial brief and that is the need to avoid unwarranted sentencing disparities among the defendants with similar records who have been found guilty of similar conduct. That would be 3553A6. Did he know about that disparity, that is, had he readjusted the sentence of the co-conspirator at the time that he made his final ruling on O'Dayne's request for . . . Yes, Your Honor, because the lead defendant, the individual who was determined to be, I guess by the PSI, the most culpable that had gone to trial, that individual had a score of 43 that got him mandatory . . . But that adjustment was before his final ruling on O'Dayne, is that right? That was, that is correct, Your Honor. It was, he made that ruling or issued that order on May the 19th, I believe it was. That would have been about a month and a half prior. There was no reference to or there was nothing in this record that could explain away the individual a mandatory life down to 35 years. He wasn't a law enforcement officer, the other individual. That is true, Your Honor, but he is identified as one of the key individuals . . . I thought you said there was nothing in the record that could explain it. That explains it to me. Well, Your Honor, the individual who got this benefit or this sentence reduction was one of the individuals who was involved and responsible for soliciting . . . and been empowered by the state as a law enforcement officer to enforce the laws and given special privileges and authority as a law enforcement officer. I'm not going to argue with you about it. I'm just telling you why I don't agree with you on that point and you're welcome to try to convince me that I'm wrong. Then I would question, Your Honor, how eliminating sentencing disparities can be ignored when Mr. Ordain was . . . I hate to sound like a former president of the United States, but it all depends on the definition of disparity. All right, Your Honor. I'm talking about the facts here. Mr. Ordain was enhanced, I believe, by either three or four points, three points, well, maybe two, two or three points at least. He had an enhancement because of his position. If he didn't have that, then it wouldn't probably . . . and there were other factors that caused him to have a sentence of between three hundred and sixty-five months to life. That might be an understandable and explainable . . . Well, is it your position that the court could not consider the abuse of the public trust, the law enforcement position he held, not only to enhance, but also when looking at the 3553A factors? You're not suggesting that's double counting, that he couldn't do that? Your Honor, I'm not suggesting that, but I believe that there needs to be a record explaining that that is the basis, as opposed to just giving lip service to these different factors. For example, stating that in the, I think it's the July order, his obstruction of justice. There was no obstruction of justice. In fact, the trial judge specifically found there was no obstruction of justice by Mr. Ordain. But in this order that we're talking about now, that we're talking as far as the denial, the July 8th order, he cites to obstruction of justice. That is factually an error. That's your best point for error and remand, so let's see now what Ms. Hoffman has to say about that. Good morning, Your Honors. Andrea Hoffman on behalf of the United States. Although the court has skipped past the one stage, I would ask the court to consider one thing about the underlying question of authority rather than jurisdiction. The court in Hamilton set forth the standards for how to look at a case when you have 150 kilogram level 38 criteria that's now been changed to a 450 kilogram criteria. The court in that case said if you can look to the original sentencing factors, the original determinations and make a decision about the 450, that that's the starting point and that the obligation is upon the defendant to demonstrate that he has been in fact eligible for a 782, in this case, amendment reduction. In this case, the defendant can't have met that burden. The district court didn't have the authority to reduce this sentence, even if it had wanted to exercise its discretion. You're asking us now to kind of make factual findings. It seems to me that the district court didn't make. Isn't that kind of a difficult argument to assert? The only reason I don't think it's a difficult argument, Your Honor, is because the factual findings that I'm asking this court to rely upon were in fact made in 1999. The district court, as far as I remember, simply made a finding that it was 450, was it 450 kilos? More than 350, I think. More than 300, right. But he didn't make any other findings that would have supported you that it was a greater amount. There just simply isn't any factual finding there. I mean, it would have to be made by us in the first instance. I would argue that he in fact did do that, Your Honor, back in 1999 because . . . I would argue that other than what he said up front, which was essentially indeterminate, that he never made a calculation of amount. If he did, you show me where he did because I can't find it. The court did not explicitly, Your Honor. Tell me implicitly where he made a finding other than what looked to me to be an indeterminate statement on the front end at the outset. If we go back . . . Follow what I'm saying. We're referencing it that way. I absolutely do, Your Honor. If we go back to the 1999 sentencing, in that sentencing there is a dispute over the drug quantity. Through the course of the hearing in Government's Exhibit 985 or Docket Entry 985, the government lays out 240 kilograms worth of drugs directly handled by Mr. Audain and at least 600 kilograms of cocaine handled by Evan Gorge, who is the co-defendant. The court, after listening to this testimony, or the argument at the sentencing, referenced the PSI, the objections, the responses by the parties, and the trial testimony that that court had sat through, and specifically found the testimony of Evan Gorge, Marie Juney Jean, and others to be credible, and then overruled the objection, and then in the statement of reasons, specifically adopted the PSI with the small exception of the obstruction of justice criteria. The PSI then has been ruled to . . . I thought the PSI had an appendix that backed off of the PSI proper on the quantity. Am I wrong about that? Yes. The appendix, Your Honor, talked about more than 350, but in paragraph 65 of the PSI . . . I'm sorry. I thought the appendix responded to the defendant's objection on the quantity and backed off of the paragraph that you're referring in the original PSI. I don't believe so, Your Honor. I believe that it . . . what it talks about, it doesn't remove the reasonable and foreseeable language at all, which holds . . . Why did the probation officer file the appendix with a different quantity range than in the original PSI if it wasn't meant to supersede it? But the quantity range was still, when you put the two pieces together, is still more than the 450 kilograms, Your Honor. Range, but not a finding? No. No. But the PSI has both . . . when you take all of those numbers together, even if you took just the part articulated at the sentencing hearing, you're still at 835 kilograms . . . 39 kilograms, Your Honor. Let's go back to what the judge did, though, on the front end. Yes, sir. The original sentencing itself, which was what I was getting at with my question. If I have it right, Ordain objected to the amount attributed to him and argued that the trial testimony demonstrated that the amount was more than 50, but less than 150 kilograms. He also objected to the PSI, which indicated that he had assisted Marie Jeuny-Jean in transporting the drugs and introduced Gourguet to the drug traffickers. The district court overruled the objection to the drug quantity, finding the testimony of various witnesses credible, but ultimately, he holds Ordain accountable for at least 150 kilograms of cocaine because that's all he really had to find. Yes, Your Honor. So he doesn't find him responsible for anything more than that, does he? No. In the court sentencing transcript, he speaks specifically of 150 kilograms. Okay. So where is it that he actually makes a determination of the amount of cocaine here? I don't think he ever did. It may be that it doesn't matter here because he says, I wouldn't give it to him anyway because of his position, and that might be harmless error, but is it not a fact that he did not make that calculation? I think that that is accurate, Your Honor. The court did not specifically say, step one is this criteria, and these are my findings with respect to step one. And that is a violation of how we've said you've got to come at these 3582 proceedings. You got to do two things. Make the calculus, and then you're free to say, okay, I'm going to do it or I'm not based upon these factors. But the trial judge did not do the first thing he was obliged to do. That was error, was it not? I do believe that it could be considered error, Your Honor, but I think it is harmless. And what theory would it not be error? It is error, Your Honor, but it's harmless in this context, given the... Okay, so now tell me why. So it's harmless both based on the quantity of drugs that were involved. When we look at the record as a whole, as... to make our own determination of the amount when the trial court chose not to do that. I'm still looking just at the pleadings that relate to this argument as opposed to going back to the sentencing documents. Seems to me the best argument you've got, and maybe the only one, is that it didn't matter to the trial judge. He told us unambiguously this was a profound abuse of trust by a law enforcement officer, and whether it was 150 or more, he wasn't giving this guy any relief, period, end of story. And I think that's partially true, Your Honor, and evident by how he sentenced in the original sentencing when he had an opportunity to sentence this defendant to 360 months at that time. But that's different from saying he did not make a mistake, he did not follow the regime and the protocol that he was obliged to follow. Without question, Your Honor, which is... Let me ask you about this. Did the government object to him not making the Step 1 determination? In this context, the government's initial pleading that it filed laid out all of the steps. I know, but he went ahead and said, I don't have to do Step 1 because I denied it on Step 2. Did the government then stand up and say, we object to you not doing it under Step 1? Well, we weren't present before it was done on the papers, Your Honor, but the government did not file a motion... Okay, so you didn't preserve the issue. And to the extent Anderson says it's jurisdictional, that A is dicta and B is erroneous dicta because Arbaugh said to the Supreme Court, and Arbaugh told us to quit throwing around loosely the term jurisdiction. And at most, this is not, I don't see any way in the world this is jurisdictional. We use it sometimes as a synonym for authority, carelessly use it. Supreme Court fessed up to doing it and told us to quit doing it too, and we're still doing it. I was trying to call it . . . But that's dicta. And also telling the district court, this is the way you do it, Step 1, Step 2, as we did in Hamilton, that's dicta. Unless somebody can find a place where the district court didn't do Step 1, but did it under Step 2, denied relief and we reversed. It makes sense to say you've got to do both steps before you grant a 3582C because that's what the statute says, but you can deny under either step unless and until there's binding case law to the contrary. And in Hamilton, I'd like to think the reason I didn't object to Judge Hall saying that is it didn't make any difference in that case because we affirmed the denial. So, I don't think that he has to do Step 1 unless he screws up . . . I don't think he has to do Step 1, but he can get reversed for denying erroneously under Step 2 by referring to the obstruction of justice enhancement, referring to obstruction of justice as a reason for denying relief under Step 2 when we've said repeatedly, and these are holdings, that you have to hold constant to your findings from the original sentencing. Now, why isn't that error under Step 2, and since Step 2 was the only basis he denied it under, we're required to reverse? Your Honor, the only argument I would make for why that would not be an error that requires reversal is because there were grounds that were sufficient. Yeah, but he said and. He said there's three reasons I'm going to do it, A, B, and C. He didn't say I would . . . Judge Moreno showed us in this case and has shown us in other cases he knows how to say it doesn't make any difference, and he didn't say obstruction of justice doesn't make any difference. He said it's one of the grounds I'm denying it on. I do not disagree, Your Honor. If you go to the first order, though, in the first order the court said . . . That's not where we're here. We're here on the second order. Okay. So, if we're looking only at the second order, then the court is correct that Judge Moreno referenced the obstruction of justice. The other two grounds would have been . . . So, why shouldn't it be reversed and sent back and said do it again? My argument is solely that the other two grounds were sufficient on their own merit, so it is harmless. But he did it cumulatively. He didn't say one, two, or three. He did it cumulatively. I cannot disagree. Now, I take it that obstruction of evidence was not . . . he didn't get an enhancement for it. He did not. So, I was waiting for you to argue, well, it's irrelevant because he didn't get an enhancement. But even though he didn't get an enhancement, it was offered as a affirmative reason for his decision. The only reason . . . So, therefore, it's still relevant even though it didn't calculate into the sentence itself. The only possible argument I was going to have made would be that at the sentencing originally in 1999, the district court sustained the defendant's objection to the obstruction. There were two different paragraphs that dealt with the obstruction. The court did not . . . that described factually the underpinnings of the obstruction enhancement and then there was the subsequent calculation paragraph. The court sustained the objection to the . . . So, he rejects it on round one and he adopts it on round two. I'm sorry. He rejects obstruction on round one in imposing the sentence and on round two, he imposes . . . he reaches the ruling he did in part because of obstruction of justice, which is at war with the finding he made in round one. It is arguably. It is, Your Honor. Why isn't that fatal is all I want to know. How do we get around it? The only basis I have to assert to the court is the fact that you could dissect that from it and look at it for the moment. Agreeably, he said and. I understand it's all conjunctive. There were grounds that were sufficient . . . And you're saying it's clear from this record he's going to do the same thing anyway because the obstruction of justice was the lesser of the considerations. The essential consideration was abuse of trust. Absolutely, Your Honor. And . . . So, we're spinning our wheels, sending it back. The odds are, the chances are that they'll get the same result. I would agree, Your Honor. The court could . . . Is that the test? No, it is not. The odds are that it's going to be the same? I mean, don't we have to find that, in fact, that it would have been the same, that there was no substantial possibility that it would not have changed the result? Well, Your Honor, I should be more technically correct and I apologize for my casual answer because the standard the court just said is, in fact, I think applicable in this case. When you look to how this judge sentenced this defendant originally choosing to jump to life from 360 and the strength for which he said the abuse of trust issues and the respect of the question of this defendant having had an oath of office, he did it both in the sentencing transcript and he did it in the statement of reasons, even. And then to have referenced it multiple times, albeit in the order we're not technically here on in 1326 and then again in 1345. It is clear this court, as Judge Marcus just said, is going to be driven, if not largely, not entirely, certainly largely by . . . substantially by the abuse of trust. This was a law enforcement officer not just having TSA responsibilities but absolutely having the opportunity to carry a weapon which he used . . . Do we know that with the certitude that we have to know that in order to reach the conclusion you would have us reach? I believe you do, Your Honor. When you go back to the original findings, look at the court's statement of what he said on the original sentence, look at the statement of reasons where he reiterated it in a statement of reasons which he didn't need to have amplified there, and then when you look at the court's findings in both . . . in the 1345 order and even the 1326. One other quick question I have. What authority did the district court have to construe the letter for a lawyer as an application for resentencing under 3582? Your Honor, there is a longstanding practice in federal courts to look at pro se litigants' pleadings and . . . Right, but he was surprisingly sophisticated. This . . . You know, and he says, all I want is a lawyer. I'm not making the application here. Your Honor, without a question, the court could have and had it not done so, it would have let this defendant have an opportunity . . . I want to know what authority the district court had to convert the application for a which he then proceeded to direct response from the United States, got it, and then denied it. Your Honor, I have not a case that is on point that would address this. Would I . . . Why isn't your argument, he had none, I'll stipulate to reversal with instructions to dismiss it. I mean, this isn't a case . . . it apparently isn't a case in which construing a document as being a pleading bars a future filing of any kind. No, it wouldn't. Apparently, there's no impediment to a long rolling series of 3582Cs, which is odd law, but apparently is the established law in our circuit. But when or if we send this back to Judge Marino, it ought to be with instructions that there are two prongs. You can't grant relief unless he wins on both. You can deny on either one, but what you can't do is deny solely on the second one on grounds of obstruction of justice. I anticipated some member of this court might say that ruling to me, Your Honor, that proposed ruling to me, Your Honor, and I can't address every point of that. There are several steps in this in which it could have been done differently, and we would be standing in a . . . Let me just be candid with you. One thing we consider subconsciously, at least some of us consciously, is it's not going to take much to find out the answer to this. You send it back to him, you don't have to have another hearing. No, sir. As a matter of fact, you're not supposed to have another evidentiary hearing. You can't. If you're right about almost certain he was going to deny it anyway, it won't take long to find that out. No, sir.  Thank you. Thank you, Your Honors. Ms. Carroll, it looks like we almost negotiated a victory for you, but if you'd like to try to snatch defeat out of the jaws of it . . . I'd like for one of my head to stay ahead, Your Honor. I would just simply request that the court does, in fact, reverse and remand for the whole matter to be taken back before the judge. What does that mean? Translate that into English. What is the district judge supposed to do? I believe . . . Does he have the authority to begin with to construe the application for a lawyer, which he now has, to go to the merits of the 3582? I believe the court . . . Or should we leave that issue alone altogether and simply send it back and say you relied on obstruction in round two, you rejected it in round one. We can't discern harmless error. Go back and do it again. I'm asking you what you think the mandate issuance from this court ought to be. What ought we to be saying to the tribunal? Your Honor, in all candor, based on the arguments that I made in my initial as well as reply brief, I believe the judge erred with regard to all aspects of this matter. Yeah, but it hardly matters now he has a lawyer. No, I'm not talking about the lack of counsel because the court has appointed me and I recognize that. No, I'm talking about the court's failure . . . You're not entitled to a hearing, that's for sure, isn't it? I'm not certain it is absolutely certain. If new evidence is going to go in and be considered, the government offered new evidence, it seems to me that's a different story. Your Honor, I believe . . . I don't see how you'd be entitled to a hearing. I'm not asking for a new evidentiary hearing, Your Honor. I believe that the government is going to be coming back arguing certain matters that may, I'm not saying entitled me or my client to a hearing or certainly not an evidentiary hearing. I'd have to see what the government is proposing. I believe the district court's order of July the 8th needs to be reversed and the case remanded. Thank you. Thank you, Your Honor. We note you were court appointed, appreciate you accepting that responsibility.